UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| HARDIK PRAJAPATI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00290-JPH-MG |
| | ) | |
| BRISON SWEARINGEN[1] Clay County Sheriff, | ) | |
| SAMUEL OLSON in his official capacity as Acting Field Office Director of Enforcement and Removal Operations, Chicago Field Office, Immigration and Customs Enforcement, | ) | |
| MARKWAYNE MULLIN in his official capacity as Secretary, U.S. Department of Homeland Security, | ) | |
| TODD BLANCHE Attorney General of the United States, | ) | |
| | ) | |
| Respondents. | ) | |

### ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Hardik Prajapati is a noncitizen who was arrested by U.S. Immigration and Customs Enforcement ("ICE") officials on March 19, 2026, and is detained at the Clay County Jail in Brazil, Indiana. Mr. Prajapati petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from custody. Dkt. 1 at 13.

For the reasons explained below, his Petition is **DENIED.**

---

[1] The **clerk is directed** to update "Brison Swearinger" to "Brison Swearingen." *See* dkt. 1 at 1.

1

## I.    Background

Mr. Prajapati is an Indian citizen. Dkt. 1 ¶ 16. He entered the United States in 2022 by crossing the border from Mexico into the United States and was apprehended by officers with Customs and Border Patrol (CBP) in Arizona.  Dkt. 6-1 at 2.  He was released under humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). *Id.*

Once in the United States, Mr. Prajapati timely filed for asylum, dkt. 1 at 6 ¶ 28; dkt. 6 at 2; developed community ties, and established a family, including a child who is a U.S. citizen, dkt. 1 ¶ 27; and was given legal authorization to work in the United States, dkt. 1 at 6 ¶ 27; dkt. 6-1 at 2.

On March 19, 2026, Mr. Prajapati's humanitarian parole was terminated, he was placed in removal proceedings pursuant to a Notice to Appear, and he was arrested pursuant to an I-200 administrative warrant. Dkt. 6-1 at 4–6. As the reason for termination of his parole, the letter from the Department of Homeland Security to Mr. Prajapati states, "Neither urgent humanitarian reasons nor significant public benefit warrant your continued parole at this time." *Id.* at 5.

The Notice to Appear charges Mr. Prajapati with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General" and under 8 U.S.C. § 1182(a)(6)(A)(i) for not possessing necessary identification documents. *Id.* at 9.

2

## II.    Discussion

In his Petition, Mr. Prajapati argues that "Respondents' application of § 1225(b)(2), [] has resulted in a violation of his Fifth Amendment due process rights." Dkt. 1 at 7 ¶ 32. More specifically, he claims that the government did not make an individualized determination that "urgent humanitarian reasons" no longer justify his parole, nor did they identify changed circumstances—namely, that he is a flight risk or danger—to warrant his detention. *Id.* at 10–11 ¶¶ 42–43; dkt. 11 at 3.

### A. Section 1225(b)(2)

It's undisputed that Mr. Prajapati's detention is governed by 8 U.S.C. § 1225(b)(2).[2] Dkt. 1 at 7; dkt. 6 at 4. Subject to exceptions not relevant here, § 1225(b)(2) provides that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [full removal] proceeding." The Supreme Court concluded that, read most naturally, § 1225(b)(2) mandates detention until removal proceedings have concluded. *Jennings v. Rodriquez,* 583 U.S. 281, 299 (2018). "In other words, release on bond is categorically barred by statute." *Rodriguez v. Olson,* 814 F. Supp. 3d 945, 959 (N.D. Ill. 2026).

### B. Due Process

---

[2] The parties do not agree *why* Mr. Prajapati's detention is governed by this statute, but that is immaterial to the resolution of Mr. Prajapati's petition on the arguments presented by the parties. *United States v. Page*, 123 F.4th 851, 865 (7th Cir. 2024) (discussing district court's obligation to decide cases based on the arguments presented by the parties).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property[] without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *The Japanese Immigrant Case*, 189 U.S. 86, 100–01 (1903)). The Amendment applies to all noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.*" Mathews*, 424 U.S. at 332. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. 678 at 690.  *See also Foucha v. Louisiana*, 504 U.S. 71, 80, (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").

Mr. Prajapati argues that his detention is unlawful under the test from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976):

> The due process calculus under [*Mathews*] requires the court to evaluate the private interest, the probability of error (and the effect of additional safeguards on the rate of error), and the government's interest in dispensing with those safeguards, with a thumb on the scale in favor of the statute's constitutionality.

*Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (citations omitted) (applying the *Mathews* test to the mandatory detention provision in 8 U.S.C. § 1226(c));

*see also Ceballos Ortiz*, No. 2:25-cv-00548-MPB-MJD, dkt. 18 at 7 (S.D. Ind. Nov. 19, 2025) (applying the *Mathews* test to an immigration detainee's due process challenge).

Respondents argue that the *Mathews* analysis does not apply here, citing *Demore v. Kim*, 538 U.S. 510 (2003) for the proposition that "the Supreme Court held that '[d]etention during removal proceedings is a constitutionally permissible part of that process.'" Dkt. 6 at 7 (quoting *Demore*, 538 U.S. at 531). *Demore* involved 8 U.S.C. § 1226(c), a statute that requires the Attorney General to take into custody aliens who are removable because of having been convicted of certain enumerated crimes.  538 U.S. at 513.  But *Demore* held that Congress could apply a categorical rule of mandatory detention under § 1226(c) based on evidence of high flight rates for criminal aliens.  *Id.* at 518–31.  It did not provide an alternative framework, however, to evaluate a due process challenge in the first instance. Because Respondents offer no alternative to *Mathews* to determine whether Mr. Prajapati's detention under § 1225(b)(2) violates his due process rights, the Court applies the three-part balancing test set forth in *Mathews*.

### 1. **Private interest**

Respondents argue that Mr. Prajapati has articulated only an "abstract interest in freedom." Dkt. 6 at 7.  They do not respond to his argument, however, that he has "a protectable liberty interest" in remaining on parole, having been paroled into the United States for more than three years. Dkt. 1 at 8 (citing *Azalyar v. Raycraft*, 814 F. Supp. 3d 926, 933 (S.D. Ohio 2026)). In *Azalyar*, which Respondents do not address, the court found that the petitioner had a

5

liberty interest that was created when the government granted him parole. *Azalyar*, 814 F. Supp. 3d at 933–34. The court further found that the petitioner had a "significant private interest in his freedom" after spending "more than three years at liberty in the United States." *Id.* at 934. *Contrast Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014) ("We have repeatedly held that the *opportunity for* discretionary relief from removal is not a protected liberty interest because aliens do not have a legitimate claim of entitlement to it." (emphasis added)). Here, Mr. Prajapati was paroled in 2022. Dkt. 1 at 4. Between the date of his parole and arrest in 2026, he lived freely in the United States for over three years, developed ties with the community, was twice granted authorization to work in the United States, and established a family, including a child who is a U.S. citizen. *Id.* at 6 ¶ 27; dkt. 6-1 at 2. Based on these facts and in the context of the arguments presented by the parties, the Court finds that Mr. Prajapati has a significant interest in remaining on parole.

## 2. Probability of error

The second *Mathews* factor "requires the court to evaluate the probability of error (and the effect of additional safeguards on the rate of error)." *Parra*, 172 F.3d at 958. Respondents argue that brief detention of an alien during removal proceedings without an individualized finding of danger or flight risk is constitutionally permissible. Dkt. 6 at 7 (citing *Demore,* 538 U.S. at 528). Mr. Prajapati argues that "[c]ivil immigration detention must be nonpunitive in purpose and must bear a reasonable relationship to the statutorily authorized goals of preventing flight and protecting the community from danger." Dkts. 1 at

6

9 (citing *Zadvydas*, 533 U.S. at 690); 9 at 5. He claims that his detention "lack[s] any basis grounded in the statute's purposes . . . [so] the risk of erroneous deprivation of his liberty is exceptionally high." Dkt. 1 at 10.

In *Demore*, the Court determined that an alien's due process rights were *not* violated when he was subject to mandatory detention under § 1226(c) without any individualized determination that he posed a danger or a flight risk. 538 U.S. at 523–29. In coming to that conclusion, the Court traced a line of precedent going back over 50 years that had consistently rejected the argument that due process requires aliens to receive individualized determinations of danger to the community and risk of flight in the context of detention during deportation proceedings. *Id.* at 523–26 (discussing *Carlson v. Landon*, 342 U.S. 524 (1952) (upholding INS no-bail policy for deportable aliens who were members of the Communist party; *Reno v. Flores*, 507 U.S. 292 (1993) (upholding INS policy requiring detention of alien juveniles during deportation proceedings unless they could be released to the custody of their parents, legal guardians, or certain other adult relatives)). These cases reflect the Supreme Court's "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526. So, *Demore*'s reach extends beyond upholding the constitutionality of § 1226(c) and weighs heavily against Petitioner's due process challenge to the application of § 1225(b)(2).

So does the Seventh Circuit's opinion in *Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999). There, the Court found that the probability of error from

7

detaining the petitioner under § 1226(c) was zero because he conceded the facts necessary for a finding of deportability. *Id.* at 958. He did not, for example, argue that he was a citizen, that he hadn't been convicted of an aggravated felony, or that his detention is indefinite because his home nation would not take him back. *Id.* at 957. Similarly, here, Petitioner is a citizen of India, he hasn't contested the government's charge of inadmissibility, and there has been no showing that cannot be returned to India. Dkt. 1 at 4 ¶ 16, 7 ¶ 31.

Petitioner argues that despite these facts, his detention violates due process because he was previously released on parole and there has been no individualized finding that he is a danger to the community, a flight risk, or that circumstances have changed since he was paroled such that his detention is now necessary when it wasn't before. *Id.* at 9 ¶¶ 38–40. Citing *Zadvydas*, Petitioner argues that "[c]ivil immigration detention must be nonpunitive in purpose and bear a reasonable relationship to the statutorily authorized goals of preventing flight and protecting the community from danger." Dkt. 1 at 9 ¶ 39.

But in *Zadvydas*, the petitioner claimed that his detention (following an order of removal) was unlawful because it had continued too long. 533 U.S. at 682. The Court held that civil, non-punitive detention must be reasonably related "to the purpose for which the individual [was] committed," which prohibits post-removal-order indefinite detention. *Id.* at 690, 699. But "detention *pending a determination of removability*," by contrast, has an "obvious termination point." *Id.* at 697 (emphasis added). Thus, the "basic question"

8

habeas courts must answer, the Court concluded, is "whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* at 699.

Here, § 1226(b)(2) mandates detention "pending [removal] proceeding[s] . . . if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  Thus, the relevant statutory purpose of detention is to facilitate removal proceedings.  8 U.S.C. § 1225(b)(2).  Mr. Prajapati fails to explain how his current detention contravenes that statutory purpose or lacks an "obvious termination point." *See also Brito-Goncalvez v. Field Off. Dir., Detroit Field Off., Immigr. & Customs Enf't*, No. 1:26-CV-94, 2026 WL 1077448, at *4–5 (S.D. Ohio Apr. 21, 2026) (rejecting "non-duration-based, free-standing due process inquiry" when petitioner had been detained for only 100 days).

Instead, *Demore*, which was decided after *Zadvydas*, stated that "since *Mathews*, this Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522.  *Demore* also said that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528.  Against this backdrop, Petitioner does not convincingly explain why his detention violates due process because there has not been an individualized finding of danger to the community and risk of flight.  Nor has Petitioner convincingly explained why termination of his parole violates due process unless Respondents come forward with specific evidence proving that "[n]either urgent humanitarian reasons nor significant

public benefit warrant [his] continued parole," dkt. 6-1 at 5. *See* 8 U.S.C. § 1182(d))(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled."); dkt 6-1 at 5 (Notice of Termination of Parole) ("Neither urgent humanitarian reasons nor significant public benefit warrant your continued parole at this time.").

For these reasons, Mr. Prajapati has not demonstrated that his detention currently presents a high risk of erroneous deprivation of liberty.

### 3. Government's interest

Finally, as the Seventh Circuit recognized in *Parra*, the United States has a "powerful interest in maintaining . . . detention in order to ensure that removal actually occurs." 172 F.3d at 958; *Demore*, 538 U.S. at 523 ("[T]his Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."); *Carlson*, 342 U.S. at 538 ("Detention is necessarily a part of [the] deportation procedure."); dkt. 6 at 7.

*     *     *

In sum, Mr. Prajapati has alleged a protected liberty interest, and the government has alleged a countervailing interest in detaining noncitizens during removal proceedings. Mr. Prajapati ultimately fails to show, however, that his detention in connection with removal proceedings, which has been approximately 68 days, creates a high risk of erroneously depriving him of liberty. He therefore has not shown that his current detention violates due process.

10

### III.    Conclusion

The Court **DENIES** the petition. This denial is without prejudice, recognizing that due-process concerns may arise if pre-removal-proceeding detention goes on too long and is no longer connected to removal proceedings. The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Date: 5/26/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel